OF THE

## STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY,

## AND THE PREROGATIVE COURT,

NOVEMBER TERM, 1894.

JOHN KEAN, JR., et al., appellants,

*v.*

THE UNION WATER COMPANY, respondent.

1. A court of equity has no jurisdiction, in a direct proceeding for that purpose, to determine whether an election of the directors of a private corporation has been legally held, and whether certain persons claiming to be and acting as such, are such.

2. The case of *Owen* v. *Whitaker, 5 C. E. Gr. 122,* approved and followed.

On appeal from a decree advised by Vice-Chancellor Pitney, whose opinion is reported in *Union Water Co.* v. *Kean, 7 Dick. Ch. Rep. 111.*

[813]

*Mr. Richard V. Lindabury, Mr. Frank Bergen* and *Mr. Frederic W. Stevens,* for the appellants.

*Mr. Abraham V. Schenck,* for the respondent.

The opinion of the court was delivered by

BEASLEY, C. J.

On the part of the appellants, who were the defendants in the court of chancery, it is insisted on this appeal that the subject of the suit is not within the cognizance of a court of equity. In the process of deciding the case, a jurisdictional objection of this nature must of necessity have precedence.

Looking at the bill before us in its general aspects, it presents to our view neither more nor less than a controversy between two rival sets of directors of the corporate defendant, each claiming to be its legal representative, having as such the right to exercise the functions appertaining to their office. This is the sole ground on which jurisdiction over the case in hand can be claimed, for there are no other facts stated in the bill which even tend to strengthen, in this particular, the complainant's position. Indeed, such additional facts as are there exhibited must be deemed rather to impair than to add force to the contention that this contest is susceptible of equitable cognizance. The averments are to this effect: The complainant alleges that many years ago the commissioners named in its charter organized it in due form, and that subsequently certain persons were chosen directors, who still continue to be such; that a number of years after such organization, as the appellants contend, these same commissioners convened and received subscriptions for stock, and that the persons so subscribing elected the appellants to be directors. They also deny the legality of the election of the directors who are represented in the suit by the corporate body. The *status* of these parties is this: Each contends that the election of directors relied upon by his opponent is invalid for the want of a legal organization of the corporate body at the time of choosing, respectively, such officers. No one who ex-

amines the case with the least care, can have any doubt upon this subject. There is no ground nor hint of any circumstances laying a further jurisdictional foundation.

If, therefore, the court of chancery had rightful cognizance of the controversy before us, it was because that court has the power to arbitrate between rival claimants to corporate office.

✗ A jurisdiction resting on this single basis was asserted and exercised in the present case in the inferior court, and the inquiry now arises, can that course of law be vindicated?

It does not seem possible to doubt that this conclusion just stated stands opposed to everything that had preceded it in the shape of judicial decision and judicial declaration. The rule, as decided and expressed, was that a court of equity could not inquire into the legality of an existing corporation, except when such inquiry arose collaterally in a case within its cognizance, and that a dispute touching the election of directors did not, *per se*, constitute such a case. This doctrine is not only explicitly stated, but is just as explicitly enforced by decree, in the case of *Owen* v. *Whitaker, 5 C. E. Gr. 122*. The nature of the controversy in that instance was not merely similar but was in all respects identical with that now present on this appeal, so that if the present decision should be affirmed by this court as an inevitable concomitant, the reported decision would be repudiated as a precedent.

The facts to which the adjudication now referred to applied have been carefully collected and stated in the elaborate and very lucid brief of the counsel of the appellants, and may be thus summarized, viz.: By the act incorporating the Sussex County Railroad Company, sixteen persons were nominated as incorporators and commissioners. The capital stock of the company was fixed at $175,000. The commissioners gave notice, opened books and received subscriptions in an amount exceeding $175,000, and thereupon apportioned the stock among all the subscribers. A controversy arose as to the right to make such apportionment. The persons who subscribed for the first $175,000 of stock claimed that they were entitled to the full amount of their respective subscriptions, and that all the sub-

scriptions made in excess of such amount were void. The two classes of stockholders thereupon elected two boards of directors, and a bill was filed by one class of stockholders and directors against the other class of stockholders and directors to ascertain which party were the true stockholders and directors.

It will be observed from this statement that the issue was, whether a court of equity was the appropriate tribunal to adjudge of the legality of these two several elections, and that is precisely what has been done in the present case. Nor is there a particle of doubt with respect to what Chancellor Zabriskie, who decided the case, considered the issue before him, nor with respect to the rule that was applied in disposing of such issue. He thus, certainly in very plain terms, states the problem he is called upon to solve. He says : " The first question in the cause is, whether the court has jurisdiction to determine whether an election of the directors of a private corporation has been legally held, and whether certain persons claiming to be and acting as directors are such." And in deciding this question he declares, emphatically : " This court has no jurisdiction to determine the validity of this election or the right of the directors elected to hold and exercise the office of directors, and therefore can grant no relief that is merely incident to that power, such as to restrain the directors from acting as such."

It has not been observed how it can be reasonably denied that this decision is as applicable to the facts now before this court as it was to the facts which led to it. As we think, the two cases are not to be differentiated by the existence of immaterial distinctions with respect to mere forms of procedure. The circumstances that, in the reported case, unlike the present proceedings, the corporation was not the complainant, and some of the prayers of the bill are variant from those in the bill before us, are obviously insignificant disagreements, for they neither did nor could affect the judgment. In the reported case the chancellor declared that he had no jurisdiction to determine whether an election of a private corporation has been legally held, and that he had no power to restrain the defendants from acting as such; and in the present case, his honor the vice-

chancellor has adjudged that he has the capacity to entertain such a controversy, and accordingly has restrained the defendants from exercising their alleged office.

It does not seem possible to avoid the conclusion that, in the present inquiry, the decision in *Owen* v. *Whitaker* is, with the utmost exactness, directly in point, and as it is the expression of the opinion of a very great and experienced jurist, and has existed and has been approved of for over twenty years, it cannot be hastily pushed aside, for all that can be done, in the presence of such a precedent, is to follow it, or, after full consideration and on the most stable grounds, to reverse it.

In deciding the case of *Owen* v. *Whitaker*, it is held that the statute laws of this state provide an ample remedy for the injury complained of, and the forty-fourth section to the Corporation act (*Rev. p. 184*) was particularly referred to.   That provision is in these words, viz. :

"It shall be the duty of the supreme court, upon the application of any person or persons, or a body corporate, who may be aggrieved by or may complain of any election or any proceeding, act or matter, in or touching the same, reasonable notice having been given to the adverse party or to those who are to be affected thereby, of such intended application, to proceed forthwith and in a summary way to hear the affidavits, proofs and allegations of the parties, or otherwise inquire into the matter or causes of complaint, and thereupon establish the election so complained of or to order a new election, or make such order and give such relief in the premises as right and justice may appear to said supreme court to require; *provided*, that said supreme court may, if the case shall appear to require it, either order an issue or issues to be made up in such manner and form as the supreme court may direct in order to try the respective rights of the parties who may claim the same to the office or offices or franchise in question, or may give leave to exhibit, or direct the attorney-general to exhibit, one or more information or informations in the nature of a *quo warranto* in the premises."

The chancellor, in denying the jurisdiction of his court to determine the validity of an election of directors of a private corporation, describes this act as a " summary and efficient proceeding," created for the very purpose of determining the dispute before him, and he cites the case of *Mickles* v. *Rochester City Bank, 11 Paige 124*, in which Chancellor Walworth, passing on the same jurisdictional question, as well as the efficacy of an

identical New York statute, says: "The question as to the validity of the election of G., W. and S., as trustees, does not appear to be a proper subject of equitable cognizance. The legislature has provided a summary remedy by an application to the supreme court to set aside the election of these directors of it as illegal. That court, therefore, is the proper tribunal to set aside the election if it has not been in conformity to law."

In the subsequent case of *Johnston et al.* v. *Jones et al.*, Chancellor Zabriskie reiterates, with emphasis, the doctrine declared by him in *Owen* v. *Whitaker*, and discriminates between the cases in which the jurisdictional foundation is laid simply in the averment of a disputed election, as in the instance we are now considering, and that other class in which such question comes in collaterally in the determination of matters over which equity has direct cognizance. The distinction is indisputable, and is recognized in every authority that has been noticed, and is nowhere more plainly declared that in the cases just cited. After repudiating, in express terms, the theory that a court of equity, in a direct procedure for that purpose, can inquire into the question of the right to an office, or as to the regularity of a corporate election, the very able chancellor then proceeds to set out the ground on which he vindicates his right to take charge of the controversy. He says: "That the defendant obtained an office claimed by him in a corporation by an election procured to be held by him by fraud, by breach of trust and a positive agreement, by concealment and treachery, confers on a court of equity jurisdiction to inquire into the validity of such an election, for the purpose of restraining the acts of the defendant and other persons claiming office by such election. That equity had jurisdiction of the question of the legality of one of these elections, where such question arises incidentally to the decision of fraud, a breach of trust will be denied by no one versed in the law; and this is what this particular case enunciates, but how such a doctrine has any tendency to support the hypothesis in which the present decree has been rendered is not apparent."

This view of the law on this subject, thus expressed by Chancellor Zabriskie, has received the weighty approval of the

Kean *v.* Union Water Co.

late Vice-Chancellor Van Fleet. In the case of *Mechanics' National Bank of Newark* v. *Burnet Mfg. Co., 5 Stew. Eq. 238*, this very distinguished jurist says: "A court of equity has no jurisdiction to pass upon the validity of the election of the officers of a private corporation and pronounce judgment of amotion against them. *Owen* v. *Whitaker, 5 C. E. Gr. 122.* But where the question of the right or power of an officer to represent or bind a corporation arises incidentally in the course of a suit, of which this court may properly take cognizance, and it becomes necessary to look into the legality of his election and the validity of his title, in order properly to determine the rights of the parties, this court will pass upon his title and capacity, as it would upon any other question of law or fact necessarily arising in the due determination of an action. *Johnston* v. *Jones, 8 C. E. Gr. 216."*

In the opinion of this court the jurisdictional rule is properly and accurately delineated in the decisions there referred to. The question of the right to corporate office or franchise is purely a legal one. It seems to have always been so regarded. It is many years since the subject was examined by Chancellor Kent, who, in the leading case of *Attorney-General* v. *The Utica Insurance Co., 2 Johns. Ch. 371*, said that "The charge of the usurpation of a franchise has so frequently occurred, and the remedy by injunction is so convenient and summary that the jurisdiction of this court would have been placed beyond all possibility of doubt, and have been distinctly announced by a series of precedents if any such general jurisdiction existed. But I have searched in vain for this authentic evidence of such a power. The precedents are all in the king's bench, and Kyd cites nearly an hundred instances, within the last century, of informations filed in the king's bench to call in question the exercise of a franchise."

It does not appear that the principle thus authoritatively declared in this series of decisions and in influential *dicta* has ever been rejected or challenged, except in the case now under review, and, it may be, in that of *Van Dyke* v. *Stout, 4 Halst. Ch. 344.* This latter decision was properly treated by Chancellor Zabris-

kie, in *Owen* v. *Whitaker*, as of no account. It was decided,. with respect to the facts, on an incidental motion, and the chancellor, in determining the matter, does not appear to have had the faintest suspicion that he was treading on jurisdictional ground that, to say the least of it, was unstable. It is probable ' that it was considered to be a case of fraud. As an authority on the point now being considered, the case is worthless.

In conclusion, it is sufficient to say that the entire weight of authority is, in our opinion, opposed to the theory on which the decree appealed from was based. And, indeed, if there were no precedents relating to the subject, our conclusions, on general principles, would have been adverse to the jurisdiction exercised in the present instance. The controversy is exclusively a legal one ; it has no trace of anything to put it within the cognizance of an equitable tribunal, and the remedy at law is more complete than any other. The futility of a proceeding in equity is perfectly manifest. The present decree does not vacate the offices in question ; it ties the hands of the defendants, but leaves them in their offices ; and if the decision had been in their favor a decree to that effect would have been as useless as so much blank paper ; it would have left the dispute between these two sets of directors absolutely untouched, for in that litigation the determination of the court in this proceeding would not have been legitimate evidence, for the class of directors who have pushed to the front the corporation as the *dominus litis* are not parties to the present bill.

In contrast to a legal course so uncertain and ineffectual, if we turn to the provision of the statute above referred to, it will be observed that, in our entire system of law, no remedy exists that is more simple and complete.

In short, we regard the rule of law applicable to the juncture before us as settled by an unbroken series of decisions, and it is obviously so regarded by the text-writers. It is thus enunciated by Spelling, in his late work on *Private Corporations,* § *396 :*

"A court of equity will not entertain jurisdiction of a suit the purpose of which is merely to test the legality of the election of directors or to remove

:an officer of a corporation who is in actual possession.   Yet where the question .arises incidentally and collaterally in a suit rightly filed for another purpose, ,the court will decide it."

Taylor also states the rule in the same way.   *Tayl. Priv. Corp.* § *381.*

These texts are warranted by a number of authorities and in ·the notes.

Let the decree appealed from be reversed and the bill dis- .missed.

*For reversal* — THE CHIEF-JUSTICE, GARRISON, MAGIE,. REED, VAN SYCKEL, BROWN, SIMS, SMITH—8.

*For affirmance*—DIXON, BOGERT, KRUEGER—3.