The object of the bill of complaint, which purports to have been filed by the "Regular Democratic Club of Little Ferry, N.J.," a corporation, is to have the therein named defendants enjoined and restrained from doing any business under the name or style of "Regular Democratic Club of Little Ferry, N.J.," and also enjoined from carrying on or transacting any business or affairs in any form or manner other than by the use of a name other than "Regular Democratic Club of Little Ferry, N.J."
The history and development of the "Regular Democratic Club of Little Ferry, N.J.," discloses that, on October 31st, 1925, it was duly incorporated as an association not for pecuniary profit under and pursuant to the provisions of an act of the legislature of this state entitled "An act to incorporate associations not for pecuniary profit (1 Comp. Stat. p. 125; R.S. 1937, 15:1-1,c.), for the purpose of promoting the interests of the democratic party according to the principles of Thomas Jefferson. While the organization from almost its inception seemed to flourish, yet all was not well from within. Marked dissatisfaction and bitter dissention began to manifest itself from within its own ranks with ever increasing frequency and acrimony, with the result that at the organization's regular meeting of March 4th, 1938, its president, Edward Novack, orally announced his resignation. No action, however, was taken at that meeting with respect to his said resignation.
It was not until its next regular meeting which was held on April 1st, 1938, that the organization, after the reading of a letter from Edward Novack confirming his prior oral resignation, voted upon and accepted his resignation, and immediately after which almost open warfare broke loose and ran riot between the two discordant factions which had grown up within the organization, one of which, hereinafter designated as the Scheeler faction, was headed by George Scheeler, secretary of the organization, and the other of which, hereinafter designated as the Schroeder faction, was headed by William Schroeder, the vice-president of the organization. While the Scheeler faction vigorously and vociferously insisted that, *Page 396 
under a certain section of the by-laws, the president's resignation necessitated the election of an entirely new group of officers, the Schroeder faction insisted with equal vigor and voice that under another section of those by-laws, the vice-president automatically succeeded to the presidency which the resignation left vacant. In the midst of the ensuing turmoil and disorder Mr. Schroeder took the chair and, after an unsuccessful attempt to conduct the meeting, called for a motion to adjourn which, however, was promptly met by long and loud cries of "no adjournment" from the Scheeler adherents and the still lustier and more thunderous retorts of the Schroeder adherents. While pandemonium thus reigned, the Schroeder faction, claiming the motion to adjourn had been carried, left the meeting hall, but the Scheeler faction, claiming that the motion had been lost, remained and continued with the meeting, and proceeded to the election of a new set of officers by whom the business and affairs of the organization have ever since then been conducted.
Thereafter, at the next regular meeting of the organization held on May 6th, 1938, the adherents of these two rival factions again met in its meeting hall. On this occasion John Tracy, claiming to have been elected as president at the previous meeting of April 1st, 1938, took the chair, called the meeting to order and attempted to transact its business, with the result that such disorder and bedlam broke out that the police authorities had to be called in, who, in turn, had to disperse the meeting before order could be finally restored by them.
From the foregoing summary of the pertinent facts it may readily be seen that the real purpose of the bill is and can be none other than to challenge the validity of the election of April 1st, 1938, at which the group of officers, who have conducted the organization's business and affairs ever since, claim to have been elected to their respective offices. This group of officers is aligned with the Scheeler faction, while the other group is affiliated with the Schroeder faction whose representatives are the real complainants herein. Each of these rival groups affirms its own right and denies that of the other to hold the offices here in question. In this situation *Page 397 
the real and only issue which the pleadings seeks to raise and the litigants wish to have determined manifestly is, which of these two rival groups of officers was duly elected and is legally entitled to the offices here contended for.
A search of the authorities fails to disclose any head of equity jurisdiction which would warrant this court to decide the real issue sought to be settled in this suit, the sole purpose and object of which unquestionably is to have this court inquire into and determine the validity of an election of officers of an incorporated association. While cases may be found in which a court of equity may determine that question, especially when it arises incidentally to the determination of a case of equitable cognizance (Doremus v. The Dutch Reformed Church, 3 N.J. Eq. 332; Den, ex dem. Day v. Bolton, 12 N.J. Law 206; Johnston v.Jones, 23 N.J. Eq. 216; Mechanics' National Bank of Newark v.H.C. Burnet Manufacturing Co., 32 N.J. Eq. 236), nevertheless where, as here, the proceeding, despite its particular form, consists of nothing more nor less than a controversy as to which of two groups of rival officers of a corporation are its legally elected representatives, and as such entitled to the respective offices by them claimed, the jurisdiction to determine that issue is exclusively in the supreme court, while the only method by which the legal right to an office in a corporation may be put in issue is by proceedings in the nature of a quo warranto. Owen
v. Whitaker, 20 N.J. Eq. 122; Kean v. Union Water Co., 52 N.J. Eq. 813; Hankins v. Newell, 75 N.J. Law 26; Schilstra v. VanDen Heuvel, 82 N.J. Eq. 612; 90 Atl. Rep. 1056; Tonkin v.Kenworthy, 112 N.J. Law 274; 170 Atl. Rep. 233; Weitz v.Preston, 113 N.J. Law 271; 174 Atl. Rep. 429; Wolff v. Wolf,122 N.J. Eq. 243; 193 Atl. Rep. 783.
Complainants, however, vigorously urge and rely upon the cases of Millville Gas Light Co. v. Vineland Light and Power Co.,72 N.J. Eq. 305; 65 Atl. Rep. 504; Budd v. Camden Horse RailroadCo., 61 N.J. Eq. 543; 42 Atl. Rep. 1028; affirmed, 63 N.J. Eq. 804; 52 Atl. Rep. 1030; Supreme Lodge of the World, Loyal Orderof Moose v. Improved Benevolent Protective Order of Moose ofthe World, 96 N.J. *Page 398 Eq. 260; 123 Atl. Rep. 532; Glucose Sugar Refining Co. v.American Glucose Sugar Refining Co., 56 Atl. Rep. 861; EdisonStorage Battery Co. v. Edison Automobile Co., 67 N.J. Eq. 44;56 Atl. Rep. 861; Eureka Fire Hose Co. v. Eureka RubberManufacturing Co., 69 N.J. Eq. 159, and The L. Martin Co. v.L. Martin Wilckes Co., 75 N.J. Eq. 39; affirmed, 75 N.J. Eq. 257,
the enunciations in which they here seek to invoke.
But a reading of those cases readily discloses that they invoked questions of improper use of trade names, trademarks or unfair competition, and consequently are in nowise applicable to the case at bar which involves none of those questions, and in which the two rival factions and groups of officers are neither members nor representatives of two separate corporate entities, but on the contrary of the one and same corporation, viz., the "Regular Democratic Club of Little Ferry, N.J."
In view of the foregoing, I am constrained to hold that this court is without jurisdiction to determine which of the two rival sets of officers are the duly elected representatives of the Regular Democratic Club of Little Ferry, N.J., and by reason of which there will be a decree dismissing the bill. *Page 399