VAN HORN and others *v.* Rev. GOYNE TALMAGE and others.

On a bill filed by pew-holders in a church, an injunction was granted restraining the
authorities of the church, who were about pulling it down for the purpose of using
the materials in the erection of a new church on a different site, from pulling it
down.

On answer, the injunction was dissolved, on the ground that, if the complainants had
rights which would be violated, there was a remedy at law, and that the nature and
extent of the injury were not such as called for the interposition of this Court by
injunction.

The bill, filed June 19, 1849, states that the complainants are
pew-holders and members of the congregation of the Dutch Re-
formed Church of Rockaway, in the county of Hunterdon.

The bill states the proceedings, under the act of June 12,
1799, by which the elders and deacons of, &c., were incorporated,
by the name of " The Trustees of the Dutch Reformed Church
of Rockaway, in the county of Hunterdon."

That on the 25th of June, 1807, an indenture was made be-
tween Abraham Van Horn, of, &c., of the one part, and Abraham
Vandoren, Cornelius Wyckoff and William Van Horn, elders and
deacons, &c., of the second part, by which Abraham Van Horn,
in consideration of fifty cents, granted, bargained, sold, aliened
and confirmed to the said A. V., and C. W. and Wm. V., elders
and deacons, &c., and their successors, the lot of land in the
said indenture described, for the purpose of building a church,
provided the lot be occupied for the purpose aforesaid, containing
one-quarter of an acre; and all the estate, right, title, &c.; to
have and to hold unto the said A. V., C. W. and W. V., elders
and deacons, &c., and their successors, for the use of a church,
to the only proper use, &c., of them the said, &c., and their
successors forever, for the use of a church.

That, as the complainants have been informed and believe, the
said Rockaway congregation, on the execution and delivery of
the said deed, proceeded to open their subscriptions, and to erect
on the said lot a building for a church or place of worship, and
did build thereon such a building for said purpose; which was

completed during the year 1819 ; and that, on the 27th of April, 1819, a meeting of said congregation was held in said church, and articles to regulate the disposal and possession of the pews in said house entered into, agreed upon and adopted by them, as follows, (setting them forth.)   The following are some of the articles, adopted at a meeting of the heads of families :

ART. 1. *Resolved*, That the congregation dispose of the pews in its house of public worship by public sale ; that no pew be sold under its affixed valuation.

2. That no person be allowed to purchase with his subscription money more than one pew ; and that all moneys subscribed and paid towards erecting and completing this house of God go towards the payment of the pew purchased by the subscriber.

3. That every person holding a pew shall pay to consistory such salary, &c., as he may feel able to subscribe ; and if he shall neglect to pay for two years successively, the consistory may sell his pew and take the arrears of salary out of the proceeds, and return the surplus to the rightful owner of the pew ; three months notice of sale to be given to the owner.

4. That the pews shall be real and hereditary property, so that children and heirs may hold them as church property, by regular transfers so long as the property exists.

5. That if the hereditary right to any pew shall become extinct, and said pew should not be transferred by its rightful owner, such pew shall revert to the consistory, who shall take charge of the same and dispose thereof as they may deem most beneficial to the interests of the congregation.

8. That whenever repairs to the church become necessary, and no other means are at hand, the consistory shall have the power and right to assess the expenses on the pews, and the owners shall be held bound to pay the sums assessed ; and, on refusal to pay, such assessment may be recovered in the same way as arrears of salary.

9. The ownership of pews shall be determined by a certificate from the consistory and by their being registered in the church records.   The consistory, whenever payment shall have been made to them for a pew purchased, shall give a certificate, and shall cause such pew to be registered to the purchaser in a suita-

ble record to be provided for that purpose; which certificate and registry shall invest the purchaser with the right of possession the same as if he had received a deed.

11. Any of the foregoing articles or resolutions may, with the consent of two-thirds of the congregation, be amended or repealed, or have others substituted or added to them.

That the complainants purchased pews in said church, under and by virtue of said articles, as follows, (stating the pews ;) and that the same were registered in the church records, the said record commencing with the following words : " The following persons have purchased the pews affixed to their respective names, as hereditary property in the Reformed Dutch Church of the Congregation of Rockaway ; which pews and the owners thereof are to be subject to the resolutions and articles adopted by the congregation, April 27, 1819."

That the complainants received from the consistory of said church certificates of the ownership of their pews. The form of the certificate is as follows :

" This will certify that Cornelius W. Van Horn has purchased Pew No. 17 on the first floor of the Reformed Dutch Church at Rockaway, for $80, and, agreeably to an article in the regulations of said church, is entitled to the same as hereditary property in the same manner as if he had received a deed therefor."

That, by virtue of such purchase, the complainants entered upon and took possession of their respective pews, and have ever since possessed and occupied the same.

That the complainants are informed and believe, that a meeting of the said congregation was held, a copy of the minutes whereof is as follows : "Agreeably to public notice given from the pulpit, a meeting of the congregation was held, in their house of worship, on Saturday the 28th of October, 1848. The Committee which had been appointed to procure subscriptions for the repairs of the church were called upon for their report; from which it appears that $253 had been subscribed for that object. It also appears, from statements made by members of that Committee, that the repairing of the church is a measure so unpopular, and so much opposed by the people of the congregation, that they were constrained to desist from their labors. The report of

the building committee being called for, it was read and accepted, and the said committee discharged from any further action. Motion made and seconded, that the church be left as it is. Motion lost. A motion was then made and seconded that the congregation build a new church on the hill. For the motion, 36 ; against it, 14 ; carried. It was then moved and seconded, that the following be added to the articles regulating the disposal of the pews and church property, viz : ' *Resolved*, That a majority of two-thirds of the congregation have power to re-build or repair their house of worship, either upon its present or any other site.' Motion carried without opposition. On motion, a building committee of five (naming them,) was appointed, to which was added the consistory of the church as a counseling committee. On motion, the building committee, with the consistory, were authorised, in their discretion, to obtain the sense of the congregation relative to the proposed object." The said minutes remaining to this time unsigned by any of the officers or any officer of the church or said meeting.

That the said meeting was the last meeting ever held by said congregation for the transaction of business, or any meeting whatever, except on the Sabbath for their usual worship.

That the complainants are informed and believe that, on the 14th of the present month of May, 1849, a certain contract was made and entered into by and between the said building committee (naming them,) and five of the consistory of said church, (naming them,) of the one part, and Ebenezer B. Goltra, of the other part, (to which contract four of the consistory of the church would not consent, nor would they sign the same,) that said Goltra should proceed at once to erect a church for said congregation, on the hill, of the dimensions in said contract specified ; in consideration of which, the said parties of the first part, in addition to the sum in said contract specified to be paid by them to said Goltra, have conveyed to said Goltra, by said contract, the frame and wood work of the said church of the Rockaway congregation ; and have authorised and empowered the said Goltra to tear down, remove and destroy said building and convert the same to his own use ; and said building committee have agreed and determined to take away and remove the stone-work or

foundation of said church, and the stone wall enclosing the north side of the lot on which it stands, and tear down and remove all said stone-work immediately, and use the same in erecting the new church on the hill; and have given orders to their workmen to proceed to tear down said stone wall, stone-work and foundation of said church, and remove the same. And the said Goltra has also entered into the said arrangement to take down, remove and destroy the said church.

The bill prays an injunction restraining the defendants from destroying, tearing down, removing, or committing any waste whatever on the building or church belonging to said congregation, or the wall enclosing the lot on which it stands.

An injunction was granted as prayed.

An answer was put in by the consistory and the building committee.

They admit that, on the 14th May, 1849, a contract was made by and between " The Trustees of the Dutch Reformed Church at Rockaway, in the county of Hunterdon," of the one part, and Ebenezer B. Goltra, of the other part, for the purposes and to the end in the bill set forth; and admit that the said contract is signed by the Rev. Goyne Talmage, as President of the Corporation; and by John Swackhamer and Adrian H. Pickel, as elders of the said church; and by Isaac Mesler and Thomas Jobs, as deacons of the said church; but deny that the said contract is executed or signed by any of the said building committee; and deny that any of the members of said building committee or the said committee as a body are named in the said contract as parties thereto.

They say that the church edifice was erected many years ago, and when the population was much less than it now is at that place and neighborhood, and when the demand and necessity for church accommodation was not so great as now. That the said edifice has but 44 pews on the floor which can be at the disposal of the congregation, and but 48 in all on the floor of the church. That there are but 26 pews in the gallery, which are not desira-

ble for families, and are only occupied by transient persons and a few of the young people of the congregation.

That it appears by the minutes of the particular synod of the Reformed Dutch Church, an ecclesiastical body to which the Dutch Reformed Church at Rockaway is amenable, and to which it makes report, that in May, 1849, there were in the congregation of said church at Rockaway 102 families ; and these defendants aver that said report is correct ; and that said edifice is entirely too small for the purposes of said church, and in other respects not such as the interests of the congregation and the welfare of the people demand ; and that the congregation is not sufficiently large or opulent to authorize a division of the congregation and the maintenance of two distinct establishments or organizations.

They say that " The Trustees &c." is the corporate name of the religious society worshipping in said old edifice ; that said corporate body are connected with and amenable to the " Reformed Dutch Church of North America." That the said " The Trustees &c. of Rockaway" have complied with all the provisions and requirements of the act entitled "An act to incorporate trustees of religious societies," passed June 12, 1799, and are fully invested with all the corporate rights conferred by said act and all supplements thereto, and all incidental rights growing thereout ; and that the defendants Goyne Talmage, John Swackhamer, A. H. Pickel, Isaac Mesler, Thomas Jobs, John Ryer, P. E. Voorhees, P. C. Wyckhoff and John Kline compose the consistory of said church at Rockaway ; which consists, according to the constitution of the Reformed Dutch Church of North America, of the minister, elders and deacons ; and that they, as minister, elders and deacons of said church, are, according to the 12th section of the act last aforesaid, the trustees or corporators of the said corporation known in law as " The trustees of the Dutch Reformed Church of Rockaway, in the county of Hunterdon ;" and that all the acts, deeds and undertakings laid to their charge in the bill have been done and undertaken, not in their individual capacity, but by their acting as trustees or corporators of the said corporation.

They say that the ecclesiastical assemblies of the Reformed

Dutch Church of North America, to which the said church at Rockaway belongs, are, a consistory, which, by sec. 1 of Art. 2 of said Constitution, consists of the minister, elders and deacons of the church ; and which consistory has, as appears, as well by said Constitution as by sec. 12 of the Act of the Legislature passed June 12, 1799, the entire and exclusive management of the temporalities of the church ; and that a majority of the consistory is a quorum and competent body for the transaction of all business ; and the 4th sec. of the 2d Art. of the Constitution so declares. That among the items of business enumerated and specified in said Constitution as belonging to the consistory are the calling of ministers, the building of churches, and whatever relates to the temporalities of the church.

That the other ecclesiastical assemblies of said denomination next in importance are the " Classis," the Particular Synod and the General Synod. The answer states the powers of each.

And the defendants aver, that neither the Classis, Particular Synod, General Synod or congregation have any control over the the temporal affairs of the several churches ; but that those are committed to the exclusive control and management of the consistory, both by the constitution of said church and the said Act of the Legislature of June 12, 1799.

That it is not unusual for the consistories to consult and confer with the congregation, by which they are elected every two years, and with the Classis to which they belong ; and that they are, not unfrequently, regulated in their action by their opinions ; but deny that the action of the congregation, or any other body, is anything more than advisory.

They say that the consistory of said church at Rockaway, at a meeting duly held in the church, on the 9th November, 1848, unanimously passed the following resolutions :

" 1st. Resolved, by the consistory, that a lot of land be purchased suitable for a church lot, at, &c.

" 2d. Resolved, that this house of worship be re-built and placed upon the said lot of land.

" 3d. That the persons chosen by the congregation to be a building committee (naming them,) are approved of and appointed by this consistory as such.

" 4th. That the building committee be authorised to procure materials and contract for the building and completing of said house.

" 5th. That C. T. Sharp and G. Hall be a committee to appraise and estimate the value of this church."

That the aforesaid consistory, at a meeting duly held by them since the filing of the bill in this cause, passed the following preamble and resolutions, (setting them forth.) The preamble recites the filing of the bill in this cause. That the consistory believe they have acted in the premises according to the wishes of a large majority of the congregation, as will appear by the minutes and proceedings of the congregation held in the church on the 28th of October last ; and that it is evident by an instrument in writing dated Oct. 23, 1848, that a large majority, viz. a majority of more than two-thirds of the original and legal pew holders in the present church or house of worship are in favor of re-building and moving the said house from the site where it now stands, and placing it upon a lot, &c. And that consistory believes they have acted in conformity with the laws of this State and of the articles and constitution for the government of this church, and have been sustained and approved of by the Classis of New Brunswick, through a committee by them appointed, in all the proceedings had by this consistory in this matter, Therefore resolved, that Rev. G. T. and J. S. be a committee to protect and defend the rights and interests of this congregation against said complainant.

The defendants say, that the contract with Goltra for the erection of a new church and the abandonment of the old, as referred to in the bill, was duly executed by a majority of the consistory ; and that John Ryer, one of the members of the consistory, has, since the expiration of said contract, signed a certificate, hereinafter set forth, signifying his approval of said contract.

That the new church, so as aforesaid ordered to be built, has been partially erected, the foundation being partly up ; and that they are impeded and embarrassed in further carrying on the work by being prevented from using the materials of the old church in the erection of the new.

They say that four years ago it became apparent to the con-gregation that extensive repairs to and enlargement of the old church must be made or that a new church would be necessary. That, as early as January, 1844, a committee of the consistory was appointed to ascertain the expediency and expense of alter-ing the church. That the subject was then talked of, and con-tinued to be for two years or more; but no decided action was taken. On the 7th January, 1847, the subject of the alteration and repair of the church was again brought forward; when, in consideration of the importance of the subject and the absence of some of the members of the consistory, it was determined to call a meeting of the consistory, and of a committee of the congregation which had been previously appointed, to confer and advise with the consistory in relation to the finances of the church. This committee was no more than a merely voluntary committee, without power, and not recognized in any manner by the constitution or regulations of the denomination with which said church was connected; and it has now ceased to exist. This meeting of the consistory and said committee was called for January 16, 1847.

On that day a meeting was accordingly held, and it was deter-mined to re-model the church, when the subject was again dropped and suffered to die away.

On the 2d September, 1848, a meeting of the congregation was called by the consistory, to consult on the propriety of sur-rendering to the Board of Domestic Missions of the Reformed Dutch Church the sum theretofore annually received by the said church at Rockaway. At this meeting of the congregation it was resolved, that a meeting of the congregation be called, two weeks from that day, to consider the re-modeling of the church.

On the 16th September, 1848, the meeting was accordingly held, in the church, and a resolution was passed to build a new church, on the hill, in the same place where Goltra has now con-tracted to build said church. At this meeting a committee was appointed to raise money for the purpose of building the same. This committee did not raise means enough to render it safe for the consistory to proceed, and they did not act.

On the 9th October, 1848, another meeting of the congrega-ion was held, when it was resolved that the church edifice was

insufficient and incommodious, and that, as a congregation, they should proceed at once, either to make alterations in the old church or to build a new one. This resolution was passed almost unanimously; and a majority then present being in favor of an alteration of the old church, a committee was appointed to solicit subscriptions for that purpose; but so unpopular had the measure become with the congregation that the committee were unable to procure funds; and on the 28th October, 1848, the proceedings were had by the congregation as are set out in the bill.

They say that more than two-thirds of the heads of families have signed a certificate signifying their approval of the abandonment of the old church and the erection of a new one on the site selected; which certificate is as follows: "We, the undersigned, do hereby certify that we are members of the congregation that worship in the old church at Rockaway, and are in favor of the abandonment and disposal of said old church and the erection of a new church, at the site selected, and where the corner-stone has recently been laid." And that said certificate is signed by many others who are members of the congregation and are not heads of families, but who pay their portion of the salary. That this certificate is signed by all the persons who were members of the consistory on the 9th November, 1843, when the resolution to build was passed, except Peter C. Wyckoff, and by five of the present consistory, exclusive of the minister.

The defendants say there is also a subscription list for the purpose of raising money to erect the church, signed by 98 names, almost all of whom are members of the congregation, and have subscribed, in the aggregate, $1,570.

That more than two-thirds of the legal pew-holders under and according to the articles in the bill set forth, adopted for the regulation of pews, have relinquished their interest in the pews of said church, by the following release: "To the minister and consistory, &c., and to all whom it may concern: Whereas an effort is about being made to re-build and to move the said house of worship from the site where it now stands, and to place it upon, &c., therefore, to aid in the accomplishment of this object, we do relinquish and surrender up all the right and title to any pew which we or any of us hold in the said church. Witness &c., this 23d of October, 1848."

The defendants say that, excepting Goltra, they have done nothing in their individual capacity; but have acted only by authority of the church. That the Classis have a superintending and advisory power over the affairs of the church, which power was exercised with reference to the matter of building the new church at Rockaway, as appears by the following report, made by a committee appointed by the Classis of New Brunswick, as follows, (setting it forth.)

The report states that said committee unanimously agree—1st. That there is a great want of room in the present house. 2d. That it would be unwise to try to repair or re-model the existing house; because it would only postpone the question of a new church, which must come up again within five years at farthest. 3d. That therefore a new house is desirable. 4th. The only remaining point is the location of the new edifice. If this question was now entirely new, the committee might hesitate in expressing an opinion; but since, at a meeting of the congregation, held after due notice, there was a vote of more than two-thirds (36 to 14) in favor of the site on the hill; since this has been actually bought by the consistory, and nearly $1,800 has been subscribed towards erecting a building there; and since it would make the church nearly equi-distant between the two villages of Mechanicsville and White House, we cannot but think it entitled to the preference. They accordingly advise the church and congregation to act in accordance with these views. That the church can prosper, things remaining as they are, is manifestly out of the question. They therefore urge the consistory to go steadily forward, and press the new enterprise to completion at the earliest possible period. This report was dated April 26, 1849, and signed by the committee of the Classis.

And " The Trustees, &c.," who in the bill are styled " The consistory of &c.," further show, that the proceedings set out in this answer as their acts were done in a lawful manner, and were such as they insist they had a right to do; and that they have been and are still greatly annoyed and wronged by the proceedings of the complainants, who, in instituting said suit, are endeavoring to obstruct them in the lawful discharge of their duty,

and are opposing the will of the ecclesiastical assemblies of the Reformed Dutch Church and the will of a large majority of the congregation.

On this answer, a motion was made to dissolve the injunction.

*F. T. Frelinghuysen* and *W. Halsted* in support of the motion. They cited 18 *Vern. Rep.* 273 ; 9 *Cranch,* 43 ; 17 *Mass. Rep.* 435 ; 1 *Pick. Rep.* 102 ; 1 *Tenn. Rep.* 430 ; 2 *Saund. Rep.* 175, note ; 7 *Eng. C. L. Rep.* 129 ; 5 *Barn. & Ald.* 386 ; 12 *Coke's Rep.* 105 ; 2 *Bl. Com.* 429 ; 1 *Phil. Ec. Law,* 316 ; 3 *Paige,* 213.

*J. A. Hartwell* and *P. D. Vroom,* contra.

The Chancellor.   I think the injunction should not be continued.   If the complainants have rights which will be violated by any proposed action of the defendants, or either of them, they are rights for the violation of which a remedy at law may be had. The nature or extent of the injury sought to be prevented by injunction are not such as should induce this Court to interpose by injunction.

Without expressing any opinion, therefore, as to the strict legal rights of the parties, I think the case, as developed by the bill and answer, is such as should, in the discretion which the Court of Chancery exercises in reference to injunctions, determine the Court to leave the parties to their legal remedies, if they have any.

Injunction dissolved.