Complainants, eight in number, are members of St. John's Baptist Church, Camden, New Jersey. The defendant, Reverend Walter V. Cholmondeley (erroneously named William V. Cholmondeley in the bill, which mistake has been corrected by stipulation) is the presently acting pastor of the church. Complainants' bill alleges that the defendant was not legally called as pastor but assumes to act as such, and prays an injunction. An order to show cause was allowed and defendant, filing his own and many supporting affidavits, resisted any preliminary injunction.
It clearly appeared that this was a struggle for control between two factions in the church. Before any dispute arose the defendant had been temporarily acting as the pastor. A congregational meeting was held for the purpose of calling a pastor, and defendant received the vote of the majority of members present. Other members later appeared at the meeting and an attempt was made to set aside this vote and hold the matter of the selection of a pastor in abeyance. On the Sunday following the congregational meeting some words were passed on the street and police were called; they took into custody two or more members of the faction with which complainants are affiliated. It further appeared that the defendant continued to act as pastor of the church following his alleged election and that regular services have been since conducted in the church. Complainants, and those affiliated with them, it appeared, had voluntarily been absenting themselves from attendance at the church. No urgent necessity was demonstrated calling for a preliminary injunction. No irreparable damage was proven to have occurred or to be *Page 154 
likely to occur. Every fact that could create an equity in favor of the complainants was denied by the affidavits filed by and for the defendant. A preliminary injunction was, therefore, denied.
The defendant now moves to strike the bill on the grounds that (1) no irreparable damage is disclosed as having been inflicted or likely to be inflicted, (2) no property rights are disclosed in the complainants such as are cognizable by this court, and that (3) the bill seeks only to test defendant's title to the office of pastor and complainants have a full and adequate remedy in the courts of law.
The allegations in the bill are, that the church is incorporated under the laws of New Jersey and that it is a congregational church with no superior ecclesiastical body; that the certificate of incorporation makes no provision for selection of a pastor and no regular by-laws have been adopted by the congregation; that by custom and by Hiscox' New Directory forBaptist Churches, customarily used in this church, certain formalities were required to be observed in calling for and holding an election for the selection of a pastor; that a congregational meeting was held on December 2d 1940, and, as a result of the election or attempted election then held, the defendant, Reverend Walter Cholmondeley, claims to have been called as pastor, has been acting as pastor and has been so recognized by part of the church membership; that said meeting was not called and said election not held in accordance with custom and the provisions of Hiscox' New Directory and was, therefore, of no effect; that, in fact, the Reverend Cholmondeley was not selected by a majority vote of members present, but has since usurped and occupied the pulpit, acted as pastor and received the emoluments of the office.
Complainants charge also that, by reason of the occupancy of the pulpit of the church by the Reverend Cholmondeley "there have been disturbances at said church, and threatened disturbances of such an extent that the authorities had to be called in to keep peace;" by reason of the usurpation of office by the said Reverend Cholmondeley, the existence of the congregation is threatened and the property of the church *Page 155 
is threatened "as the revenues of the church have fallen off and will fall off;" that members have absented themselves from services and, by reason of their absence and refusal of participation "the existence and property of the said St. John's Baptist Church is threatened with imminent loss and danger." It is also charged that Reverend Cholmondeley, without right or authority, displaced the chairman of the board of trustees.
On these facts and charges, complainants pray that the Reverend Cholmondeley may "be restrained and enjoined from performing the duties and exercising the rights, privileges and benefits, and receiving the emoluments of the office of pastor of the said St. John's Baptist Church." Thus, complainants seek to inquire into and to have determined the legality of an election within their church and corporate organization.
In the instant case no facts have been alleged persuasive that irreparable damage to any pecuniary right of complainants is threatened. The church edifice is open for worship and services continue to be regularly held. There is no allegation of any change or contemplated change in doctrine, followed or taught. There is no allegation that complainants, and those associated with them, have in any way been denied access to the church or prevented from attending church services. The Court of Chancery will not grant an injunction merely to allay fears and apprehensions of individuals. German Evangelical LutheranChurch, c., v. Maschop, 10 N.J. Eq. 57.
The character and the extent of the injury here alleged and the relation of the parties thereto are not here such as to induce a Court of Chancery to interpose by injunction.
Vice-Chancellor Pitney, in Van Der Plaat v. Undertakers'c., Association, 70 N.J. Eq. 116; 62 Atl. Rep. 453, said:
"I conceive it to be a fundamental rule governing the action of this court that it exercise its restraining powers only for the protection of some threatened injury to a property right or a right in the nature thereof. The mere unlawfulness of an act or a series of acts, even though that unlawfulness amounts to criminality, does not excite the action of this court, unless *Page 156 
it affects the person or property rights of some individual who asks the aid of the court."
Mr. Van Der Plaat had been educated as an embalmer and undertaker and had attempted to engage in that business. Pointing out that complainant had not, on his own showing, any established business and no appliances for the transaction of business, the Vice-Chancellor concluded:
"* * * until a person who is threatened with such injurious action, and is likely to suffer pecuniarily from it, applies to the court, I cannot take action against the defendants."
Chancellor Halsted, in the early case of Van Horn v.Talmage, 8 N.J. Eq. 108, dissolved a preliminary injunction against tearing down a church building and removing the materials for use in erecting a new church at another location. Complainants were pew-holders and members of the congregation and a pew had been made real and hereditary property by official action of the church. In dissolving the injunction the Chancellor held that the nature or extent of the injury alleged and sought to be prevented was not such as to persuade a Court of Chancery to interpose by injunction.
Complainants have a full and adequate remedy in the courts of law. It has been specifically held that the remedy for a judicial determination of the right to office in a religious corporation in New Jersey is by quo warranto. Schilstra v. Van Den Heuvel
(Court of Errors and Appeals), 82 N.J. Eq. 612;90 Atl. Rep. 1056. The Court of Errors and Appeals, so declaring, reversed Vice-Chancellor Howell, whose opinion is reported in 82 N.J. Eq. 155; 90 Atl. Rep. 1056. The Vice-Chancellor was sustained in enjoining a minister from acting as pastor of the church in question, but his opinion made it clear that the minister had voluntarily renounced his connection with that church, was under ecclesiastical censure, and had been deprived of his right to administer to the congregation. The factors which formed the basis upon which the injunction was there allowed and sustained, are absent in the instant case.
Quo warranto is the appropriate remedy by which to test the title to office in a corporation, public or private. The *Page 157 
power to inquire into and adjudicate the validity of the election of officers is, by our state constitution, vested solely in the Supreme Court. Even the legislature has no power to vest any part of that judicial jurisdiction in any other tribunal. Flanigan
v. Guggenheim Smelting Co., 63 N.J. Law 647; Green v.Heritage, 64 N.J. Law 567; Goldstein v. Ewing, 62 N.J. Eq. 69;49 Atl. Rep. 517.
In Barna v. Kirczow, 71 N.J. Eq. 196; 63 Atl. Rep. 611,
Vice-Chancellor Garrison declared that the Court of Chancery had no jurisdiction to determine which of two sets of officers were the duly elected representatives of an incorporated church association. Quo warranto, he said, was the proper remedy, and, although the bill of complaint charged that defendants were closing the church building against members who were cestuis quetrust for whom the property was held in trust, the bill was dismissed.
In Wolff v. Wolf, 122 N.J. Eq. 243; 193 Atl. Rep. 783,
Vice-Chancellor Lewis dismissed a bill seeking to challenge an election in an unincorporated ladies auxiliary of the United Brotherhood Congregation, declaring the remedy to be by quowarranto. In Regular Democratic Club of Little Ferry v.Tracy, 126 N.J. Eq. 394; 9 Atl. Rep. 2d 56, Vice-Chancellor Lewis also, and for the same reason, dismissed the bill. Decisions cited, not cited herein, are: Owen v.Whitaker, 20 N.J. Eq. 122; Kean v. Union Water Co., 52 N.J. Eq. 813; Hankins v. Newell, 75 N.J. Law 26, and State, exrel. Weitz v. Preston, 113 N.J. Law 271; 174 Atl. Rep. 429.
In Smith v. Trustees of the Bethel A.M.E. Church,89 N.J. Law 397; 99 Atl. Rep. 102, the Supreme Court refused to allow a writ of mandamus to compel church trustees to call an election as the real question involved was the legality of an election of church trustees. Mr. Justice Swayze, instead, allowed an information in the nature of quo warranto.
The Supreme Court has always had "a wide and broad" discretion to grant permission to a desiring relator under the QuoWarranto act. Mitchell v. Tolan, 33 N.J. Law 195; Housman v.Earle, 98 N.J. Law 379; 120 Atl. Rep. 378; Reihl v. Wynne,105 N.J. Law 507; 146 Atl. Rep. 204; Mulsoff v. Sloat, 8 N.J. Mis.R. 554. *Page 158 
Complainants, insisting that their only remedy is in equity, rely on three lines of decisions: (a) Salter v. Burk,83 N.J. Law 152; 83 Atl. Rep. 973; (b) Kelly v. McIntire, 123 N.J. Eq. 351; 197 Atl. Rep. 736, and Grupe v. Rudisill, 101 N.J. Eq. 145; 136 Atl. Rep. 911; (Court of Errors and Appeals),104 N.J. Eq. 233; 144 Atl. Rep. 874, and (c) In re Election ofTrustees of Bethany Baptist Church, 60 N.J. Law 88;36 Atl. Rep. 701.
The rule enunciated in Salter v. Burk, supra, and followed in such cases as McGlynn v. Grosso, 114 N.J. Law 540;178 Atl. Rep. 86; Murphy v. Cuddy, 121 N.J. Law 209; 1 Atl. Rep. 2d758, and Devlin v. Cooper, 124 N.J. Law 155; 11 Atl. Rep.
2d 29, is that one complaining of the illegality of the election to office of another, must first show, on quowarranto, that he himself has legal title to that office.
The very wording of the rule should demonstrate its inapplicability to the facts in this cause. No one here claims the office of pastor except the defendant. If he does not fill it, it is vacant.
More important is the fact that those cases all involved, not a religious office but the right to a municipal office, where the remedy is given and limited by statute. The section now appears as R.S. 2:84-7, and reads:
"When it is alleged that a person usurps, intrudes into or unlawfully holds or executes a municipal office or franchise in this state, any citizen thereof, who believes himself lawfully entitled to such office or franchise, may, as relator, file in the office of the clerk of the supreme court an information in the nature of a quo warranto against such person for usurping, intruding into or unlawfully holding or executing any such office or franchise, and may proceed therein in such manner as is usual in cases of informations in the nature of a quo warranto, except as is otherwise provided in this article."
It is true that church disputes were considered and determined by the Court of Chancery in Kelly v. McIntire, supra, andGrupe v. Rudisill, supra, but those cases did not arise from and depend for jurisdiction upon the single issue here presented of an election to church office. In the latter case there was an alleged illegal sale of the church property and in the former an attempt to divert the church property to *Page 159 
uses other than those imposed upon it. In both the general equitable doctrine of breach of trust was invoked. The distinction to be made is exemplified in the decision of the Court of Errors and Appeals in Schilstra v. Van Den Heuvel,supra, where Vice-Chancellor Howell was affirmed in his application of the breach of trust doctrine to the diversion of property and temporalities and reversed for considering and determining a dispute as to church office. In reversing the Vice-Chancellor, Chief-Justice Gummere said, for the court:
"Under the system of jurisprudence which prevails in this state, the only tribunal in which the right to an office can be judicially determined is the Supreme Court, and the only method by which it can be put in issue is by proceedings in the nature of a quo warranto. Simon v. Hoboken, 52 N.J. Law (23 Vr.)367; Roberson v. Bayonne, 58 N.J. Law (29 Vr.) 325; Casey
v. Chase, 64 N.J. Law (35 Vr.) 207; Miller v. Washington,67 N.J. Law (38 Vr.) 167; DuFour v. State Superintendent,c., 72 N.J. Law (43 Vr.) 371; Bumsted v. Blair,73 N.J. Law (44 Vr.) 378. And this is true, not only with relation to state and municipal offices, but also those of private corporations (Owen v. Whitaker, 20 N.J. Eq. (5 C.E. Gr.)122; Hankins v. Newell, 75 N.J. Law (46 Vr.) 26); religious as well as secular (State v. Crowell, 9 N.J. Law
(4 Halst.) 390; Pulis v. Iserman, 71 N.J. Law (42 Vr.)408."
The decision in the Bethany Church Case clearly does not apply here. True, the law court refused to inquire into a disputed election of church trustees, but the applicants had misconceived their remedy. A summary inquiry into and determination of the validity of an election of trustees of the religious corporation was sought under section 44 of the General Corporation act then in effect. Gen. Stat. p. 916; now, R.S.14:10-16.
The provisions of that section were taken from "An act to prevent fraudulent elections by incorporated companies and to facilitate proceedings against them," passed December 8th, 1825 (Harr. Comp. 112). Mr. Justice Magie, for the Supreme Court, held that a legislative intent appeared to *Page 160 
make the provisions of this section apply only to corporations "having stock, books for the transfer of stock and stockholders." The section was held to be entirely inapplicable to religious societies, and, although the Supreme Court apparently deemed it unnecessary to so state, applicants were left to pursue their remedy by quo warranto.
As early as March 17th, 1795, the Council and General Assembly of New Jersey provided for informations in the nature of quowarranto. Rev., William Patterson's, 177. Section 1 of that act is substantially the same as section 1 of the present act, R.S.2:84-1.
In the year 1829 the New Jersey Supreme Court heard and determined a dispute as to the election of trustees in the Presbyterian Church of Perth Amboy on an information in the nature of quo warranto. State v. Crowell, 9 N.J. Law 390. The law existed and the remedy had been recognized, therefore, before the decision, In re Bethel Church.
Complainants' bill seeks only to contest the validity of a church election and defendant's title to the office of pastor of the church. Complainants have a full and adequate remedy by quowarranto; they have disclosed no property or pecuniary right which should be protected by the Court of Chancery nor have they, in their bill, made a case of irreparable damage, suffered or to be reasonably anticipated.
The motion to strike should prevail; I will advise a decree dismissing the bill of complaint, with costs. *Page 161